UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **DANIEL WALKER,** ) <br> **ROBERT PISKADLO,** on behalf of ) <br> themselves and all others similarly ) <br> situated, ) <br> ) <br>     **Plaintiffs** ) <br> ) <br> **v.** ) <br> ) <br> **OSTERMAN PROPANE LLC and** ) <br> **VINCENT OSTERMAN,** ) <br> ) <br>     **Defendants** ) | Civil Action No. 1:17-cv-10416 <br><br> Filed pursuant to Judge' Saris's Order <br>     Docket Entry #51, dated 6/29/18 |

**SECOND AMENDED CLASS ACTION COMPLAINT AND
DEMAND FOR TRIAL BY JURY**

### I. INTRODUCTION

1. This class action is brought by two former employees of Defendants, on behalf of themselves and all other similarly situated delivery drivers who work or worked for Defendants primarily in Massachusetts. Defendants' unlawful failure to compensate delivery drivers for all hours worked violates Massachusetts Payment of Wages Law, G. L. c. 149, § 148. Plaintiffs seek, among other forms of relief, statutory trebling of all damages, interest, and attorneys' fees and costs, as provided for by law.

### II. PARTIES

2. Daniel Walker ("Walker") and Robert Piskadlo ("Piskadlo") (collectively the "Plaintiffs") both were employed by Osterman as delivery drivers. Piskadlo was also employed as a service technician by Osterman.

3. Walker is an adult resident of New Hampshire. At all times relevant, Walker was an employee of Defendants, working primarily in Massachusetts from January 2015 through September 2016.

4. Piskadlo is an adult resident of Massachusetts. At all times relevant, Piskadlo was an employee of Defendants, working primarily in Massachusetts and New Hampshire, from 2013 to 2017.

5. Defendant, Osterman Propane LLC ("Osterman Propane"), is a Delaware corporation with a principal place of business located at One Memorial Square, Whitinsville, Massachusetts. Osterman Propane operates locations throughout New England, and has approximately nine branch locations in Massachusetts.

6. Upon information and belief, Defendant, Vincent Osterman ("Osterman"), is an adult resident of Massachusetts. Osterman is the President of Osterman Propane.

## III. STATEMENT OF FACTS

7. Osterman Propane provides propane for residential, commercial and industrial client needs and services over 80,000 customers across the New England states of Massachusetts, New Hampshire, Connecticut, Rhode Island and Vermont.

8. Osterman Propane offers its customers 24-hour emergency service, and advertises to customers that employees are on call 365 days a year to address customer needs. In fact, on its website, Osterman promises customers, "when you call into one of our branches, you will always talk to a real person, not a machine. Day or night, Osterman Propane is always ready to resolve any problems you may have." See Exhibit A.

9. In order to provide the services that it promises customers, Osterman employs, in relevant part, propane delivery drivers.

10. Walker was employed by Osterman Propane as a bulk propane delivery driver from January 2015 to September 2016, working primarily out of Osterman Propane's Methuen customer service center.

11. Piskadlo was employed by Osterman Propane as a bulk propane delivery driver from 2013 to 2015, and until 2017, as a service technician. Osterman worked primarily in Massachusetts and New Hampshire.

12. Bulk propane delivery drivers, such as Walker and Piskadlo, are responsible for delivering propane gas to residential and business customers within an approximately 40-mile radius of the Methuen, Massachusetts customer service center. Plaintiffs worked in Massachusetts and New Hampshire.

13. Osterman Propane requires all bulk propane delivery drivers to work for a minimum of eight-and-one-half hour shifts. For example, Walker and Piskadlo were assigned to work a minimum shift from 7:00AM to 3:30PM.

14. During the busy fall and winter seasons, from October to April, shifts often exceeded eight and one-half hours. During the busy season, Plaintiffs, and other similarly situated drivers, sometimes worked in excess of ten hours per day, for six or seven days per week.

15. Osterman Propane had a policy and practice of paying drivers at a rate equivalent to one-and-one-half times their regular rate for hours worked in excess of 40 hours per week.

16. For each eight-and-one-half hour shift that Osterman Propane's bulk propane delivery drivers worked, Osterman Propane deemed 30 minutes to be a meal break. Accordingly, Defendants automatically deducted 30 minutes from the hours worked whether or not the 30-minute break was actually taken.

17. However, bulk propane delivery drivers, including Plaintiffs and others similarly situated, regularly worked through their entire shift, never taking any 30-minute meal break, and were on call to respond to customer delivery needs for the entire duration of their shift. Osterman failed to confirm whether its delivery drivers actually took a lunch break, despite the fact that the company knew or should have known that no lunch breaks were actually being taken.

18. In fact, Mike Smith, Branch Manager at Osterman Propane's Methuen branch, insinuated to Plaintiffs that they were not permitted to take a break during their shift.

19. Osterman regularly suffered or permitted its delivery drivers throughout Massachusetts to work through the 30-minute meal breaks that the Company automatically deducted from their paychecks.

20. As a result of Defendants' policies and practices related to the automatic deduction of 30-minute meal breaks, their drivers routinely are not paid the full amount owed within six days of the termination of the pay period.

21. Bulk propane delivery drivers were not paid either their regular rate or one-and-one-half times their regular rate in accordance with Osterman Propane's policy and practice.

22. Upon information and belief, the practice of automatically deducting meal breaks and failing to confirm whether such meal breaks were actually taken, occurred throughout the Commonwealth of Massachusetts at other Osterman branches.

## IV.  CLASS ALLEGATIONS

23. The members of the Rule 23 class are readily ascertainable because the number and identity of the Rule 23 class members are determinable from Defendants' records. For the purpose of notice and other purposes related to this action, their names and addresses are readily

available from Defendants. Notice can be provided by means permissible under Rule 23. This action is properly maintainable as a class action under Mass. R. Civ. P. 23(a)-(b).

24. The Rule 23 class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Upon information and belief, there are more than 50 Rule 23 class members.

25. Plaintiffs' claims are typical of those claims which could be alleged by any Rule 23 class member, and the relief sought is typical of the relief which would be sought by each Rule 23 class member in separate actions. All the Rule 23 class members were subject to the same corporate practices of Defendants, as alleged herein: failure to pay delivery drivers for all hours worked by automatically deducting compensation for meal breaks, during which time delivery drivers were not relieved of all duties and continued to perform work for the benefit of Defendants.

26. Plaintiffs and other Rule 23 class members sustained similar losses, injuries, and damages resulting from Defendants' failure to pay wages and overtime in compliance with Massachusetts Payment of Wages Law. Plaintiffs and the Rule 23 class members have all been injured in that they have been uncompensated or undercompensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' company-wide policies and practices affected all Rule 23 class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each of the Rule 23 class members. Although the amount of the individual class members' damages may vary depending on their periods of employment, those damages are readily ascertainable from the Defendants' financial records. As a result, common issues of liability predominate over individualized issues of damages.

27. Plaintiffs are able to fairly and adequately protect the interest of the Rule 23 class members and have no interests antagonistic to the Rule 23 class members. Plaintiffs are represented by attorneys who are experienced and competent in both employment litigation and class action litigation.

28. A class action is superior to other available methods for the fair and efficient adjudication of these claims, particularly in the context of wage-and-hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants and are often hesitant to assert their rights out of fear of direct or indirect retaliation. Among other things, individual adjudications would result in highly inefficient duplication of discovery, briefing of legal issues, and court proceedings. Moreover, in the absence of class action, the amount of each class member's damages likely would be too small to warrant separate legal action. If appropriate, the Court is empowered to fashion methods to efficiently manage this action as a class action.

29. Common questions of law and fact exist as to the Rule 23 class members that predominate over any question only affecting Plaintiffs and the Rule 23 class members individually. These questions include whether the purported meal break was compensable working time and whether Defendants paid Plaintiffs and the Rule 23 class members for all hours worked.

30. Plaintiffs seek certification of a class of similarly situated delivery drivers who worked predominantly in Massachusetts at any time within three years of the commencement of this action up through the time of judgment.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

31. Walker and Piskadlo filed a complaint with the Massachusetts Attorney General's Office stating that Osterman failed to pay employees for lunch breaks not taken and received a right-to-sue letter.

## VI. COUNTS OF THE COMPLAINT

### COUNT I
### VIOLATION OF PAYMENT OF WAGES LAW

32. Plaintiffs hereby restate and incorporate each paragraph of this Complaint as if fully stated herein.

33. Defendants' automatic reduction of wages representing the 30-minute meal breaks, where Plaintiffs and the Rule 23 class members were not relieved of all duties and continued to perform work for the benefit of Defendants, has deprived Plaintiffs and the class members of money rightfully owed under the Massachusetts Wage Laws, in violation of Mass. Gen. Laws c. 149, § 148.

34. Additionally, Defendants' failure to pay delivery drivers their regular rate of pay for all hours worked violates Mass. Gen. Laws c. 149, § 148.

35. This claim is brought pursuant to M. G. L. c. 149, § 150.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter the following relief:

1. Certification of this case as a class action;

2. An award of damages for all wages and other losses to which Plaintiffs and similarly situated employees are entitled;

3. Statutory trebling of all wage-related damages;

4. Attorneys' fees, costs, and interest; and

5. Such further relief as the Court deems fair and just.

**VII.   JURY DEMAND**

Plaintiffs demand a TRIAL BY JURY on all claims so triable.

                                                        Respectfully submitted,
Daniel Walker, individually, Robert Piskadlo, individually, and
on behalf of all others similarly situated,
By his attorney,

Dated: July 18, 2018

                                                        /s/ Eric R. LeBlanc
Eric R. LeBlanc (BBO# 666786)
eleblanc@bennettandbelfort.com
Michaela C. May (BBO# 676834)
mmay@bennettandbelfort.com
Bennett & Belfort, P.C.
24 Thorndike Street, Suite 300
Cambridge, MA 02141
(617) 577-8800

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY filed electronically through the Court's ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 18th day of July 2018.

                                        /s/ Eric R. LeBlanc
                                        Eric R. LeBlanc